A98A0795. SUPCHAK et al. v. PRUITT et al.

(503 SE2d 581)

BIRDSONG, Presiding Judge.

Karl and Beverly Supchak appeal the grant of summary judgment to Ruth W. Pruitt and to Boyce Pruitt d/b/a Boyce Pruitt Livestock & Feed under OCGA § 9-11-56 (h). The case remains pending below against Boyce Pruitt individually. Ruth Pruitt lives on her one hundred forty-acre farm in Gwinnett County, and her son Boyce Pruitt lives with his family on an adjoining seven-acre property that was deeded to him by his mother.

The Supchaks filed suit against Boyce Pruitt, individually, Ruth W. Pruitt, and Boyce Pruitt d/b/a Boyce Pruitt Livestock & Feed to recover for damages incurred by Karl Supchak when a vehicle driven by Mr. Supchak collided with a horse allegedly owned by the defendants. The complaint also contained a claim for Beverly Supchak's loss of consortium. Boyce Pruitt and Ruth Pruitt filed separate answers.

Boyce Pruitt denied that he had ever done business as Boyce Pruitt Livestock & Feed and asserted that he was not aware of any business entity or operation known as Boyce Pruitt Livestock & Feed. Although Boyce Pruitt admitted that he owned and had custody of the horse, he denied that Ruth Pruitt either owned or had custody of the horse and otherwise denied the material allegations of the complaint. Ruth Pruitt's answer also denied ownership or custody of the horse.

After discovery, Boyce Pruitt d/b/a Boyce Pruitt Trucking ("Pruitt Trucking") filed a motion for summary judgment. The motion asserted that Boyce Pruitt had never done business as Boyce Pruitt Livestock & Feed, that Pruitt Trucking never had an ownership interest in or exercised custody or control over the horse involved in the collision, and that the horse was not kept on Pruitt Trucking's property. This motion was supported by the affidavit of Boyce Pruitt.

The affidavit stated that Boyce Pruitt owned and did business as

Boyce Pruitt Trucking and had never done business as Boyce Pruitt Livestock & Feed and that no such entity has ever existed. Boyce Pruitt's affidavit also stated that he was the owner of the horse that was struck by Mr. Supchak and that neither Pruitt Trucking nor Boyce Pruitt Livestock & Feed owned or had ever been responsible for the care, custody, or control of the horse. Boyce Pruitt's affidavit also stated that the horse had never been kept on the property of Boyce Pruitt Trucking or Boyce Pruitt Livestock & Feed.

Later, Boyce Pruitt submitted a second affidavit. This affidavit stated that Pruitt Trucking is in the business of hauling feed ingredients, does not engage in any other business, and does not engage in the purchase and sale of horses. The affidavit further stated that Pruitt Trucking is not associated with, does not have any financial relationship with, and does not have any jointly owned assets with Ruth Pruitt. Additionally, the affidavit stated that Pruitt Trucking has a separate checking account from Boyce Pruitt and the funds of Pruitt Trucking and Boyce Pruitt are not commingled.

Ruth W. Pruitt also moved for summary judgment; she contended that she was not the owner of the horse in question, and although she owned the pasture where the horse was kept, she breached no duty owed the Supchaks. Her motion was supported by her deposition and the deposition of her son, Boyce Pruitt.

The Supchaks filed separate responses to the motions and submitted affidavits from two officers of the Gwinnett County Police Department Animal Control Unit and the affidavit of an expert. The police officers stated they responded to the call about Mr. Supchak hitting the horse and spoke to residents of the area who identified Boyce Pruitt as the owner of the horse. They also stated they spoke to Boyce Pruitt who admitted ownership of the horse and told them his son had been training the horse to open the gate and the horse had opened the gate and let itself out. The expert's affidavit stated the proper standards for fences used to contain horses and also stated that the fences around Ruth Pruitt's pasture were inadequate for the horse in question. The Supchaks also relied upon the depositions of Boyce and Ruth Pruitt to oppose the motions for summary judgment.

Subsequently, the trial court granted summary judgment to both Ruth Pruitt and Boyce Pruitt Livestock & Feed. The trial court's order states, "[b]ased on the evidence in the record, it appears that Ruth Pruitt did not own, nor did she exercise custody or control over, the horse in question." Then, in regard to Boyce Pruitt Livestock & Feed the order recited, "[l]ikewise, the evidence in the record shows that none of the businesses owned by Boyce Pruitt, if they in fact exist, owned or exercised custody or control over the horse." After the grant of summary judgment to these defendants, the action remained pending solely against Boyce Pruitt, and he, individually,

is not a party to this appeal. *Held*:

1. The standards applicable to motions for summary judgment generally are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). When ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843). Further, when reviewing the grant or denial of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence. *Boulware v. Quiktrip Corp.*, 226 Ga. App. 399 (486 SE2d 662); *Goring v. Martinez*, 224 Ga. App. 137, 138 (2) (479 SE2d 432).

2. Although Boyce Pruitt raised the issue of whether Boyce Pruitt Livestock & Feed was an entity capable of being sued, the trial court did not rule on this issue. Consequently, whether Boyce Pruitt Livestock & Feed is an entity capable of being sued is not properly before this Court.

3. The trial court did not err by granting summary judgment to Ruth Pruitt and Boyce Pruitt Livestock & Feed. Our law places the duty on *owners* of livestock to keep their animals from running at large: "No owner shall permit livestock to run at large on or to stray upon the public roads of this state or any property not belonging to the owner of the livestock, except by permission of the owner of such property." OCGA § 4-3-3. Consequently, Ruth Pruitt and Boyce Pruitt Livestock & Feed could be liable for the damages incurred by the Supchaks only if they were owners of the horse involved in the collision. For these purposes our law defines an owner as "any person, association, firm, or corporation, natural or artificial, owning, having custody of, or in charge of livestock." OCGA § 4-3-2 (2).

Under the facts of this case, neither Ruth Pruitt nor Boyce Pruitt Livestock & Feed falls within that definition of an owner. The evidence plainly shows Ruth Pruitt merely allowed her son Boyce Pruitt to keep his horses in her pasture, which adjoined his property, as she also allowed him to park his trucks on her property. She received no pay for allowing the horse to be in her pasture. These acts are not sufficient to create any issue of fact over whether Ruth Pruitt owned, had custody of, or was in charge of the horse involved in the collision. Further, nothing in Ruth Pruitt's deposition testimony indicated that she owned the horse, that she had custody of the horse, or that she was in charge of the horse. In fact, the record shows that she did not even know the name of the horse and never rode the horse. Ruth Pruitt testified that her son's family owned the horse.

Although it might be inferred that Ruth Pruitt owned the horse because the horse escaped from her pasture, that inference is contra-

dicted by the statements in her deposition, Boyce Pruitt's affidavits, and his deposition that he owned the horse. "In passing upon a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists. When uncontradicted and unimpeached evidence is produced as to the real facts, the inference disappears, and does not create a conflict in the evidence so as to require its submission to a jury." *Backus v. Ray Jones, Inc.*, 150 Ga. App. 753, 756 (258 SE2d 693).

Moreover, we find no merit to the Supchaks' contention that Ruth Pruitt is liable in this case because the fences around her pasture were inadequate to contain this horse. "If the landowner is neither the owner nor keeper, he has no duty to confine or restrain the animal. If an animal is allowed by its keeper to escape from its confinement and harm results, that damage results from the negligent confinement, not from the condition of the land. To the extent that the condition of the land made it inadequate or unsuitable for confinement, the responsibility for selecting an adequate method of confinement is upon the keeper, not upon the landowner who neither owned nor kept the animal." (Citations and punctuation omitted.) *Evancho v. Baker*, 196 Ga. App. 903, 904 (2) (397 SE2d 166). There is no evidence in the record showing that Ruth Pruitt had custody of the horse, that she kept the horse for her son, or that she provided any care for the horse. She merely permitted her son to keep his horses in the pasture with her cows.

Because the evidence shows that she was not an owner of the horse as that term is defined in OCGA § 4-3-2 (2), Ruth Pruitt was not obligated to assure that the pasture fence was adequate to prevent her son's horse from escaping. Ruth Pruitt's interest in the pasture fence was to see that it was adequate to contain her cattle; as her cattle were not involved in this accident, she is not responsible for Karl Supchak's damages. Moreover, Ruth Pruitt's deposition testimony that the whole family attempted to make sure the pasture fence was in good repair does not change this result.

The Supchaks' argument that Pruitt Livestock & Feed was the owner of the horse is without merit. There is no evidence establishing that Pruitt Livestock & Feed was the owner of the horse nor any evidence from which such ownership might be inferred. The Supchaks' contentions to the contrary are based upon mere conjecture or supposition based on the fact that Boyce Pruitt's truck was parked at his mother's farm. As any inference arising from that fact is directly contradicted by the affidavits and depositions of Ruth and Boyce Pruitt, there is no issue for the jury. *Backus v. Ray Jones, Inc.*, supra.

We also reject the Supchaks' contention that under the evidence

in this case either Ruth Pruitt or Boyce Pruitt Livestock & Feed could be held liable through any theory of liability based on the operation of a joint venture. See *Kissun v. Humana, Inc.*, 267 Ga. 419 (479 SE2d 751). There is simply no evidence that the defendants in this action or any combination of them was engaged in a joint venture concerning the ownership of the horse. The uncontradicted evidence is that the horse was owned by Boyce Pruitt for the use of his immediate family, and neither Ruth Pruitt nor Boyce Pruitt Livestock & Feed owned or had any interest in the horse.

Accordingly, the trial court did not err by granting summary judgment to Ruth Pruitt and Boyce Pruitt Livestock & Feed on Karl Supchak's claims for damages arising from his collision with the horse.

4. Further, one spouse's claim for the loss of the other spouse's society or consortium is a derivative one stemming from the right of the other spouse to recover for his injuries. When the other spouse cannot recover from the alleged tortfeasor as a matter of law, however, the alleged tortfeasor also is not liable for loss of consortium arising from those injuries. Here, Karl Supchak cannot recover against Ruth Pruitt and Boyce Pruitt Livestock & Feed because they did not own the horse, and thus Beverly Supchak has no claim against them for the loss of consortium. *White v. Hubbard*, 203 Ga. App. 255, 257 (416 SE2d 568).

5. Boyce Pruitt Trucking's motion for imposition of sanctions under Court of Appeals Rule 15 is denied.

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED MAY 27, 1998 — ▮▮▮▮▮▮▮▮▮

*Billy E. Moore, Jeffrey S. Gilbert*, for appellants.
*Bovis, Kyle & Burch, William B. Barrickman, John A. Love*, for appellees.

